IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT P. CHILTON,<br><br>                    Plaintiff,<br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br>                    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:14-CV-67 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Metropolitan Life Insurance's ("MetLife")[1] Motion to Strike and Motion for Summary Judgment as well as Plaintiff Robert P. Chilton's ("Mr. Chilton") Motion for Summary Judgment. For the reasons discussed more fully below, the Court will grant Defendant's Motions and deny Plaintiff's Motion.

## I.  INTRODUCTION

Mr. Chilton is a former employee of Xerox Business Services, LLC ("Xerox"), and a participant in the Xerox Health and Welfare Benefits Plan (the "Plan"). The Plan includes short term disability ("STD") benefits and long term disability ("LTD") benefits programs. Xerox funds the STD benefits and MetLife administers STD benefits claims.[2] LTD benefits are funded

---

[1] Plaintiff also named MetLife Group, Inc. and MetLife Disability in its Motion. The correct party is Metropolitan Life Insurance Company.

[2] Chilton Rec. at 248, 255.

by a MetLife insurance policy and MetLife administers the LTD benefits claims.[3]  The

Employee Retirement Income Securities Act ("ERISA") governs both plans.

On August 13, 2005, Mr. Chilton fell while rock climbing in Little Cottonwood Canyon

and suffered a traumatic brain injury with a subarachnoid hemorrhage and multiple petechial

hemorrhages.[4]  As a result of his injuries, Mr. Chilton was unable to work from August 13, 2005,

through January 2, 2006.[5]  Mr. Chilton received STD benefits from August 13, 2005, through

November 11, 2005, and LTD benefits from November 11, 2005, to January 1, 2006.[6]  After

returning to work on January 2, 2006, Mr. Chilton continued to work for Xerox until November

20, 2012.

On November 20, 2012, Mr. Chilton visited his treating psychiatrist Dr. Joseph Dye.  Dr.

Dye's notes from that day state,

> [Mr. Chilton] comes in today and is rather distraught:  He found out that he was
> just laid off from his work along with 20,000 other jobs and he is not taking it
> personally, but it does cause a big change in his life and he has to make some
> decisions.  He is going to be getting some severance pay and is going for short
> term and then long term disability, but basically has had a major life change . . . .[7]

On November 26, 2012, Mr. Chilton filed a STD benefits claim with MetLife.[8]  In the

medical information included in the claim, Dr. Dye indicated that Mr. Chilton had several

impairments preventing him from returning to work, describing him as "fatigued, [having]

memory issues, slow with tasks requiring verbal output word finding trouble, depressed, [and]

---

[3] *Id.* at 255.

[4] *Id.* at 1018.

[5] Docket No. 22, at 7.

[6] Docket No. 21, at 5.

[7] Chilton Rec. at 2214.

[8] *Id.* at 2230.

anxious."[9]  MetLife approved Mr. Chilton's STD benefits to be paid for the period of November

27, 2012, through December 25, 2012.[10]  MetLife's records indicate that it approved the payment

of benefits "to allow Chilton to have follow-up treatment and stabilize to return to work."[11]  On

December 10, 2012, MetLife also informed Mr. Chilton that approval of further benefits would

require additional medical information to make that determination.[12]

On December 19, 2012, Dr. Dye sent a new Behavioral Health Initial Functional

Assessment Form and office notes from a December 13, 2012 examination to MetLife.[13]  On

January 31, 2013, after reviewing Dr. Dye's submissions and having a Psychiatric Clinician

Specialist review Mr. Chilton's file, MetLife did not approve STD benefits beyond December

25, 2012.[14]  MetLife informed Mr. Chilton of its decision and informed him of his appeal

rights.[15]

On February 21, 2013, Mr. Chilton appealed MetLife's decision.[16]  Dr. Dye also sent

MetLife additional information to be considered with Mr. Chilton's appeal.[17]  MetLife's

Psychiatric Clinician Specialist reviewed Mr. Chilton's appeal and MetLife also referred Mr.

Chilton's file to Dr. Randy Rummler for an independent psychiatric peer review.[18]  On March 6,

2013, Dr. Rummler issued a report about his review of Mr. Chilton's file.  Dr. Rummler found

---

[9] *Id.* at 2212.

[10] *Id.* at 2208.

[11] *Id.* at 412; Docket No. 21, at 6–7.

[12] Chilton Rec. at 2208.

[13] *Id.* at 2196–201.

[14] *Id.* at 2153–54.

[15] *Id.*

[16] *Id.* at 2134–36.

[17] *Id.* at 2137–46.

[18] *Id.* at 504–08; 2110–16.

that there was not enough information or objective evidence to support a finding of impairment beyond December 25, 2012.[19]

On March 11, 2013, MetLife sent a copy of Dr. Rummler's report to Dr. Dye for review and comment, which Dr. Dye provided on March 12, 2013.[20]  The Psychiatric Clinician Specialist reviewed Dr. Dye's comments and recommended referring the file back to Dr. Rummler.[21]  After MetLife referred the file back to Dr. Rummler, he provided an addendum to his report addressing Dr. Dye's comments and reaffirmed his opinion that the records did not support a finding of impairment.[22]

On April 9, 2013, Mr. Chilton sent MetLife a copy of a neuropsychological evaluation from October 31, 2006.[23]  The evaluation was reviewed by an Appeals Psychiatric Clinician Specialist.  "MetLife concluded that Chilton 'could have improved since the time of the neuropsych testing from 2006,' and that the 2006 neuropsychological information 'would not aid in establishing restrictions and limitations in relation [to] the information contained in the file.'"[24]  MetLife did not refer the evaluation to Dr. Rummler for review.

On April 15, 2013, MetLife issued its appeal determination concluding that "the medical information on file did not support [Mr. Chilton's] continued inability to perform all of the

---

[19] *Id.* at 2119.

[20] *Id.* at 2100–04.

[21] *Id.* at 544.

[22] *Id.* at 2081–84.

[23] *Id.* at 2071–80.

[24] Docket No. 21, at 12 (quoting Chilton Rec. 556).

material and substantial duties of his occupation beyond December 25, 2012."[25]  MetLife

indicated that Mr. Chilton had exhausted his administrative remedies.[26]

On October 21, 2013, Mr. Chilton's counsel requested MetLife reconsider its denial of

LTD benefits.[27]  MetLife replied indicating that its claim determination and appeal only related

to Mr. Chilton's STD benefits claim.[28]

## II.  LEGAL STANDARD

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan."[29]  If "the plan gives an administrator

discretionary authority to determine eligibility for benefits or to construe its terms, [courts]

employ a deferential standard of review, asking only whether the denial of benefits was arbitrary

and capricious."[30]

For purposes of STD benefits, Xerox is the Plan Administrator and MetLife is the Claims

Administrator.[31]  There does not appear to be any conflict of interest that would merit less than a

fully deferential standard of review.  Plaintiff claims that MetLife has a financial interest in

determining STD benefits claims because MetLife funds LTD benefits claims.  Plaintiff argues

that because MetLife may pay LTD benefits when STD benefits expire, "there is an inherent

---

[25] Chilton Rec. at 2069.

[26] *Id.* at 2070.

[27] *Id.* at 569.

[28] *Id.* at 566–67.

[29] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[30] *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (citation and internal quotation marks omitted).

[31] Chilton Rec. at 250, 255.

conflict of interest between MetLife's discretion in paying claims and the desire to protect MetLife's financial interest from ever getting to the LTD stage of disability."[32]  Plaintiff requests that the Court conduct a less deferential review because MetLife has a financial interest in its STD benefits decision.[33]

In *Nelson v. Aetna Life Insurance Co.*,[34] the Tenth Circuit considered an ERISA case where the claims administrator for the STD benefits also determined and funded LTD benefits.[35] In *Nelson*, because LTD benefits were only payable once all STD benefits were exhausted, it was argued that the claims administrator was "'in a position to favor, consciously or unconsciously, its interests over the interests of [the claimant].'"[36]  The Tenth Circuit did not necessarily find that a conflict existed, but assumed for purposes of its analysis, that there was a conflict.

Assuming there was a conflict, the Tenth Circuit considered the conflict as a factor when determining whether the claims administrator acted arbitrarily and capriciously.  "Under that method, a conflict 'should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision.'"[37]  Similarly, "a conflict 'should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.'"  In its analysis, the Tenth Circuit gave "the conflict-of-interest factor limited weight because [the administrator] took

---

[32] Docket No. 29, at 1–2.

[33] *Id.* at 2.

[34] 568 F. App'x 615 (10th Cir. 2014) (unpublished).

[35] *Id.* at 620.

[36] *Id.* (quoting *Holcomb*, 578 F.3d at 1192).

[37] *Id.* (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117–18 (2008)).

steps to reduce any bias by hiring five independent specialists to review [the claimant's] STD claim."[38]

MetLife points to several factors that make this case distinguishable from *Nelson*.[39] Assuming a conflict exists, albeit minimal, the Court finds that MetLife reduced the risk of any bias by having an independent psychiatric peer reviewer assess Mr. Chilton's file.  Therefore, the Court will give any conflict of interest little weight when determining whether MetLife's denial of STD benefits was arbitrary and capricious.

## III.  DISCUSSION

### A.  METLIFE'S MOTION TO STRIKE

MetLife filed a Motion to Strike exhibits B and C referenced in Plaintiff's Summary Judgment Motion.[40]  MetLife argues that because these exhibits are not part of the administrative record, the Court should not consider them when determining whether MetLife's determination was reasonable.[41]  Plaintiff argues that, although the exhibits are not part of the administrative record, the Court should consider them because they are evidence of a conflict of interest.[42]

The Tenth Circuit has stated, "[W]e have frequently, consistently, and unequivocally reiterated that, in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record."[43]  There is, however, an exception to this rule.  "[T]his general restriction does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of

---

[38] *Id.*

[39] Docket No. 31, at 3.

[40] Docket No. 25.

[41] *Id.* at 4–5.

[42] Docket No. 28, at 2.

[43] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010).

interest.  Therefore, discovery related to the scope and impact of a dual role conflict of interest may, at times, be appropriate . . . ."[44]

Exhibit B appears to be a Xerox document, which outlines Mr. Chilton's claim history.[45] Plaintiff does not use Exhibit B to demonstrate the scope or impact of a conflict of interest. Therefore, the Court will strike Exhibit B.

Exhibit C is a letter from Mark B. Cunningham, Vice President of Human Resources at Xerox.[46]  Plaintiff references Exhibit C, also cited as Chilton 000086, to demonstrate the merits of Mr. Chilton's claim.[47]  Plaintiff does not use Exhibit C to demonstrate the scope or impact of a conflict of interest.  Therefore, the Court will strike Exhibit C.

B.  STATE-LAW CLAIMS

Plaintiff's complaint alleged breach of contract as well as breach of covenant of good faith and fair dealing.[48]  Plaintiff concedes that ERISA preempts these state-law claims.[49] Therefore, these claims will be dismissed.

C.  STD CLAIM

The Court will review MetLife's determination of Mr. Chilton's STD benefits claim under the arbitrary-and-capricious standard of review.  "Under the arbitrary-and-capricious

---

[44] *Id.* at 1162.

[45] Docket No. 22 Ex. B.

[46] Docket No. 22 Ex. C.

[47] Docket No. 22, at 17–18; Docket No. 28, at 16; Docket No. 29, at 1.

[48] Docket No. 2 Ex. 1.

[49] Docket No. 26, at 2.

standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[50]

> In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.
> A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.[51]

In this case, Mr. Chilton obtained STD benefits for a short period before being denied additional STD benefits by MetLife. The Court will focus its analysis on whether MetLife acted arbitrarily and capriciously in denying an extension of STD benefits beyond December 25, 2012.

MetLife relied on two main sources of evidence in making its STD benefits determination; the objective evidence in the office notes of Dr. Dye, Mr. Chilton's attending psychiatrist, and the reports of MetLife's Psychiatric Clinician Specialists as well as Dr. Rummler.

Dr. Dye's office visit notes from November 20, 2012, indicate Mr. Chilton was dealing with depression relating to changes in his life and being laid off from Xerox.[52] Dr. Dye's mental status examination notes say, "Today shows he is alert, has a clear sensorium. His affect is a little depressed and anxious, but actually no worse than it has been in the past and he is still very

---

[50] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (citation and internal quotation marks omitted).

[51] *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citations and internal quotation marks omitted).

[52] Chilton Rec. at 2214.

positive and forward thinking overall."[53]  Dr. Dye's prognosis notes state, "[Prognosis] [o]verall, is fair to good and he is working well and we have collaboratively agreed upon treatment goals which are to improve and stabilize his mood, decrease his anxiety in all of its forms, help with his cognition, alertness, concentration, and focus . . . ."[54]  Based on this evidence and Mr. Chilton's own estimation of his return to work date of December 26, 2012, MetLife approved STD benefits through December 25, 2012.[55]

When MetLife indicated that it would need additional medical evidence to support awarding benefits beyond December 25, 2012, neither Mr. Chilton nor Dr. Dye submitted anything that MetLife believed was substantially different than the November 20, 2012 office visit notes.[56]  Indeed, there are very few differences between Dr. Dye's November 20, 2012 notes and his December 13, 2012 notes.[57]  Upon reviewing additional information from Dr. Dye, the Psychiatric Clinician Specialist found that Mr. Chilton's level of treatment was not consistent with the severe impairments he and Dr. Dye were claiming.[58]

Although Dr. Dye submitted additional materials in early 2013 claiming that Mr. Chilton was disabled and unable to return to work, MetLife found that the impairments claimed were not substantiated.

On appeal, MetLife relied upon the opinion of an independent peer reviewer, Dr. Rummler, to deny Mr. Chilton medical evidence.  Dr. Rummler's report states,

---

[53] *Id.*

[54] *Id.* at 2215.

[55] *Id.* at 412–13, 2208.

[56] Docket No. 21, at 7.

[57] *Compare* Chilton Rec. at 2214–15 *with* Chilton Rec. at 2196–98.

[58] *Id.* at 495–96.

There is inadequate information to support impairment for the above dates. Claimant's psychiatric issues appear[ ] stable with no medication changes recently.   There are no objective symptoms reflecting cognitive impairment despite issues noted of such . . . .   There are no severe psychiatric symptoms such as thoughts of harm to self or others or psychotic symptoms[.] Claimant did not require inpatient psychiatric admit[.] Claimant did not require higher level care for psychiatric symptoms above outpatient setting.   There is no objective or behavioral data to distinguish psychiatric complaints of claimant from common psychiatric presentation of individuals presenting with depression and anxiety who do continue to work.  The above reflects lack of acuity and does not support impairment.

After receiving comments from Dr. Dye, Dr. Rummler made the following addendum to his report,

Additional information does not change prior opinion.  Medical records contain documentation as reviewed from claimant's visits with provider.   There is no explanation as to why provider per his appeal letter, would not document claimant['s] actual [symptoms] on progress notes but withhold such information from the medical record.   In addition[,] neuropsychological testing remains unavailable.   Such testing would likely be helpful in evaluating claimant's disability.  The lack of availability of such testing for review reflects an inability to find impairment.  As such[,] prior review remains unchanged.

In this case, the Court finds MetLife reasonably relied upon Dr. Dye's initial notes and Dr. Rummler's opinion when denying Mr. Chilton's STD benefits claim.  Although there are conflicting opinions as to Mr. Chilton's ability to work, it was not unreasonable for MetLife to rely upon the opinion of Dr. Rummler.

Plaintiff argues that reliance on Dr. Rummler's opinion is arbitrary and capricious because of his alleged bias and because Dr. Rummler did not examine Mr. Chilton.

In *Zhou v. Metropolitan Life Ins. Co.*,[59] the court stated "MetLife's denial of Plaintiff's claim and sole reliance on the opinion of Dr. Rummler over the medical data and opinions of

---

[59] 807 F. Supp. 2d 458 (D. Md. Sept. 2, 2011).

Plaintiff's treating physicians" was unreasonable.[60]  Plaintiff argues that MetLife, once again, relied solely on the opinion of Dr. Rummler over medical data and the opinions of Dr. Dye.

In this case, however, there are inconsistencies in Dr. Dye's opinion and examination notes.  Dr. Dye's notes indicate that Mr. Chilton is doing well with a positive prognosis, but that he cannot return to work.  In light of these inconsistencies, it is not unreasonable for MetLife to consult an independent physician to interpret the examination notes.  MetLife relied on Dr. Rummler's opinion that Mr. Chilton's records do not support a finding of impairment.  MetLife then made the determination that Mr. Chilton did not satisfy the STD plan's definition of disability.  MetLife's reliance on Dr. Rummler's finding that Mr. Chilton's treatment records do not support a finding of impairment was reasonable.

Plaintiff also argues that it was unreasonable to rely on Dr. Rummler's opinion when he did not examine Mr. Chilton.[61]  MetLife's reliance on Dr. Rummler's opinion when he did not examine Mr. Chilton was also reasonable in light of the conflicting information in Dr. Dye's examination notes.[62]  The Supreme Court has held,

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.[63]

---

[60] *Id.* at 474.

[61] Docket No. 22, at 23.

[62] *See, e.g., Williams v. Metro. Life Ins. Co.,* 459 F. App'x 719, 727–28 (10th Cir. 2012) (unpublished); *McClenahan v. Metro. Life Ins. Co.,* 416 F. App'x 693, 698 (10th Cir. 2011) (unpublished); *Rizzi v. Hartford Life and Acc. Ins. Co.*, 383 F. App'x 738, 750–51 (10th Cir. 2010) (unpublished); *Chalker v. Raytheon Co.*, 291 F. App'x 138, 144 (10th Cir. 2008) (unpublished).

[63] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Therefore, MetLife was not required to give special weight to Dr. Dye's opinion over Dr. Rummler's.

In this case, MetLife did not disregard Dr. Dye's opinion that Mr. Chilton could not return to work.  Rather, the record demonstrates MetLife gave multiple opportunities for Dr. Dye and Mr. Chilton to substantiate Dr. Dye's opinion with additional medical evidence to support a claim for STD benefits beyond December 25, 2012.

Dr. Dye's examination notes, coupled with Dr. Rummler's interpretation of Mr. Chilton's file, amount to substantial evidence—more than a scintilla and less than a preponderance—to support MetLife's determination.  Based on the record, MetLife's determination may not be the only reasonable determination, or even the correct determination, but it was not an unreasonable determination unsupported by substantial evidence.  Therefore, the Court will uphold MetLife's determination not to extend Mr. Chilton's STD benefits beyond December 25, 2012.

Additionally, Plaintiff argues that it was unreasonable for MetLife to deny STD benefits after having approved Family Leave Medical Act ("FMLA") leave.[64]  MetLife argues that "[t]he requirements for FMLA leave and disability benefits under an ERISA-governed plan are completely distinct" and that it is not unreasonable for MetLife to approve the FMLA leave then deny STD benefits.[65]

Under the FMLA, a treating physician or healthcare provider issues a medical certification which determines the availability of FMLA leave.  Under ERISA, the plan administrator has discretion to determine whether a claimant meets the definition of disability under a disability plan.  Given MetLife's discretion to determine STD benefit claims under the terms of the Plan, it is not unreasonable for MetLife to issue a certification under the FMLA but

---

[64] Docket No. 29, at 2–4.

[65] Docket No. 31, at 9.

13

deny STD benefits under the ERISA-governed plan.  The Court will not substitute MetLife's

issuing a FMLA medical certification for its discretionary determination of STD benefit claims.

D.  LTD CLAIM

The administrative record does not contain evidence that Mr. Chilton submitted a LTD

benefits claim to MetLife.  The LTD plan requires a claimant submit a claim for LTD benefits

within 45 days before being eligible to receive LTD benefits and no later than 90 days after the

start of the disability.[66]  An ERISA claimant must exhaust all administrative remedies before

filing suit seeking relief under ERISA.[67]

Plaintiff argues that filing a LTD claim would have been futile and, thus, qualifies for the

futility exception to the requirement that he exhaust all administrative remedies.[68]  Plaintiff

argues that because MetLife found that Mr. Chilton could perform the duties of his own

occupation or similar occupation under the STD definition of disability, MetLife would have

found that Mr. Chilton could conduct any activity that he regularly performed as a source of

income—not meeting the LTD definition of disability.[69]

In this case, while MetLife may have denied an LTD benefits claim if Mr. Chilton were

to have made one, it is unclear that MetLife would have denied his claim.  As MetLife argues,

different disability definitions apply to STD and LTD claims.[70]  Additionally, MetLife claims

---

[66] Chilton Rec. at 164, 271.

[67] *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir.1990).

[68] Docket No. 22, at 26.

[69] *Id.*

[70] Chilton Rec. 160, 164, 269–70.

different personnel would have reviewed the medical evidence, considered any appeal, and conducted an independent peer review.[71]

"In order to meet the futility exception, a plaintiff must show her claim would be denied on appeal, and not just that she thinks it is unlikely an appeal will result in a different decision."[72]  Additionally, the Court "may waive the exhaustion requirement only where resort to administrative remedies would be clearly useless."[73]

In this case, it is not clear that Mr. Chilton's LTD benefits claim would have been denied. As MetLife argues, Mr. Chilton's LTD claim would have gone through a different determination process than his STD claim.  Mr. Chilton, Dr. Dye, and other attending physicians would have been able to submit additional medical evidence to MetLife.  The Court cannot find that Mr. Chilton's LTD benefits claim would have been futile.  As such, the Court will not waive the ERISA requirement that Mr. Chilton exhaust his administrative remedies with respect to his LTD benefits claim.  Therefore, the Court will not make any determination regarding Mr. Chilton's LTD benefits.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant MetLife's Motion to Strike (Docket No. 25) is GRANTED. It is also

ORDERED that Defendant MetLife's Motion for Summary Judgment (Docket No. 21) is GRANTED.  It is also

---

[71] Docket No. 27, at 29.

[72] *Baker v. Comprehensive Employee Solutions*, 277 F.R.D. 354, 356 (D. Utah April 7, 2005) (internal citation omitted).

[73] *Lewis v. U.F.C.W. District Union Local Two & Employers Pension Fund*, 273 F. App'x 765, 768 (10th Cir. 2008) (unpublished).

ORDERED that Plaintiff Robert Chilton's Motion for Summary Judgment (Docket No. 22) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff, and close this case forthwith.

DATED May 13, 2015.

BY THE COURT:

_____

TED STEWART
United States District Judge